**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

STEVEN MICHAEL SURYNT,

Plaintiff,

v.

TOWNSHIP OF MEDFORD, *et al.*,

Defendants.

Civil Action No. 24-10562 (RMB/SAK)

**OPINION**

**RENÉE MARIE BUMB, Chief United States Judge:**

**THIS MATTER** comes before the Court upon the filing of an Amended Complaint [Am. Compl. (Docket No. 5)] by *pro se* Plaintiff Steven Michael Surynt ("Plaintiff" or "Surynt"). The Amended Complaint brings claims against the Township of Medford, Officer Lange, Corporal Denning, Officer Riordan, Officer McHugh, Officer Kostue, Captain William Dunleavy,[1] and Chief of Police Arthur E. Waterman. [*Id.* at 1.] The Court previously granted Plaintiff's IFP application. [Docket No. 4.]

---

[1] Plaintiff identifies Captain William Dunleavy as "Captain William Dunlevy" in the Amended Complaint. [Am. Compl. at 1.] The documents attached to the Amended Complaint, however, bear Captain Dunleavy's signature and spell his surname "Dunleavy." [Docket No. 5-2 at 1–5.] The Court therefore refers to him as Captain Dunleavy throughout this Opinion.

## I. SCREENING FOR DISMISSAL

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and dismiss claims that: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

Plaintiff's claims stem from a June 10, 2024 traffic stop in Medford Township. [Am. Compl. at 2.] Plaintiff alleges he was stopped at an "inspection sticker checkpoint or roadblock[,]" removed from his vehicle, handcuffed, and detained without "warrant, exigency, or lawful justification." [*Id.*; Pl.'s Aff. (Docket No. 5-1)

at 1.][2] Plaintiff alleges "[t]he inspection sticker checkpoint or roadblock was unconstitutional[.]" [Am. Compl. at 2.]

According to Plaintiff, officers did not identify a crime he had committed despite his repeated requests and ultimately charged him with obstruction after he refused to incriminate himself. [Pl.'s Aff. at 2.][3] Plaintiff alleges he was detained for more than two hours before being charged and was thereafter held in county jail for five days. [*Id.*; Am. Compl. at 4.]

Plaintiff further alleges that officers used excessive force against him despite his offering no resistance or threat and that both Plaintiff's personal footage and police body camera footage support his account. [Am. Compl. at 4.] He also alleges that officers searched his vehicle without a warrant or his consent while he was restrained in a police vehicle. [*Id.*] According to Plaintiff, body camera footage captured him refusing to consent to any search or seizure and captured Officer Lange asking Officer Kostue whether Plaintiff had pushed him, to which Officer Kostue responded that Plaintiff had "resisted[.]" [*Id*. at 3–4; Pl.'s Aff. at 2.] Plaintiff claims he "was not even interacting with Kostue but speaking to [Corporal] Denning." [Pl.'s Aff. at 2.]

---

[2] Plaintiff includes different allegations in his Amended Complaint [Docket No. 5] from his Affidavit [Docket No. 5-1.] Given Plaintiff's *pro se* status, the Court will consider the allegations from both Plaintiff's Amended Complaint and Plaintiff's Affidavit. However, in any subsequent complaint, Plaintiff must make all allegations in one pleading.

[3] The Court notes that in Plaintiff's prior complaint, Plaintiff alleged that Defendant Officer Riordan told Plaintiff that he was stopped because the inspection sticker on his vehicle had expired. [Docket No. 1 at 6.]

Plaintiff alleges he "suffered bruising, humiliation, and psychological trauma, including panic attacks, hypervigilance, and symptoms consistent with PTSD." [Am. Compl. at 4.]

Plaintiff attaches letters sent to him from Captain William Dunleavy at the Medford Township Police Department, stating that following investigations, Officer Kostue, Officer McHugh, Officer Riordan, Officer Lange, and Corporal Denning all "followed the appropriate department policies and procedures." [Docket No. 5-2 at 1–5.] Plaintiff contends that "[c]orrespondence from the police department confirms the officers 'acted in accordance with policy' despite constitutional violations, establishing a pattern or practice of abuse tolerated by the municipality.'" [Am. Compl. at 4.]

Plaintiff further alleges that, following the June 10, 2024 incident, Officer Lange distributed a police bulletin describing him as "violent" and that Plaintiff and his wife have been subjected to retaliatory traffic stops resulting in tickets, complaints, and court proceedings that were later dismissed. [Pl.'s Aff. at 3.]

Plaintiff alludes to "arrest[] for merely failing to produce identification[.]" [*Id.* at 2.] Plaintiff alleges that at the time of Plaintiff's filing it was "one full year since the original alleged incident, yet the Township has continuously postponed Plaintiff's hearing without resolution[,]" and "Plaintiff has experienced anxiety, continued legal jeopardy, and reputational damage due to this delay." [Am. Compl. at 5.] The Amended Complaint characterizes this delay as a violation of Plaintiff's Sixth Amendment right to a speedy trial. [*Id.*]

Plaintiff's Amended Complaint is lodged against the Township of Medford, and the following Defendants in their individual and official capacities: Officer Lange, Corporal Denning, Officer Riordan, Officer McHugh, Officer Kostue, Captain William Dunleavy, and Chief of Police Arthur E. Waterman. [*Id.* at 1.] The Complaint asserts the following claims against all Defendants, except for Count IV which is brought against the Township of Medford only.

> Count I: Fourth Amendment and 42 U.S.C. § 1983 ("Section 1983") Unreasonable Search and Seizure [Am. Compl. at 5.]
>
> Count II: Fourth Amendment and Section 1983 Excessive Force [*Id.*]
>
> Count III: 42 U.S.C. § 1985 ("Section 1985") Conspiracy to Interfere with Civil Rights [*Id.*]
>
> Count IV: Monell Claim for Municipal Liability against Township of Medford [*Id.*]
>
> Count V: 18 U.S.C. § 1961 *et seq.* RICO – Pattern of Municipal Corruption Claim Against All Defendants [*Id.*]
>
> Count VI: 18 U.S.C. § 242 Deprivation of Rights under Color of Law [*Id.*]
>
> Count VII: Emotional Distress and Psychological Injury [*Id.*][4]

Plaintiff seeks $5,000,000 in compensatory damages, and $10,000,000 in punitive damages. [Am. Compl. at 6.] Plaintiff also seeks injunctive relief barring the Medford Police Department from similar actions in the future, declaratory judgment

[4] The Court does not construe this to allege a claim of either intentional infliction of emotional distress or negligent infliction of emotional distress. Instead, the Court construes allegations of emotional distress and psychological injury as allegations concerning the damages he purportedly suffered. If, however, Plaintiff intends to add such claims, he would need to support his claim with additional facts.

that Plaintiff's rights were violated, and the costs of this action including court fees and service. [*Id.*]

## III. DISCUSSION

### A. Section 1983 Claims

Plaintiff sets forth claims under 42 U.S.C. § 1983 for unreasonable search and seizure and excessive force.[5]

Section 1983 provides that "[e]very person who, under color of any [law], . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. However, Section 1983 does not in itself confer

[5] The Amended Complaint names Officer McHugh and Officer Riordan as Defendants but makes no factual allegations against either Officer. The only information provided is the attachments to Plaintiff's Amended Complaint stating that the "Internal Affairs Unit of the Medford Township Police Department… completed its investigation of [Plaintiff's] initial report concerning the conduct of [Officer McHugh and Officer Riordan]" and that the investigations indicated that Officer McHugh and Officer Riordan "followed the appropriate department policies and procedures." [Docket No. 5-2 at 2, 3.] "A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Court's prior Opinion dismissed claims against Officer McHugh on identical grounds. [Docket No. 3 at 6 n. 5.] Because Plaintiff was afforded an opportunity to amend his pleading to cure this deficiency, but has failed to do so, the claims against Officer McHugh will be dismissed. *See Harvey v. Czplinski*, 2016 WL 7436052, at *2 (D.N.J. Dec. 22, 2016) (dismissing Section 1983 claims where complaint did not "in any way disclose" how defendants were personally involved). Although the Court does not consider allegations from the superseded Complaint in determining whether the Amended Complaint states a claim, given Plaintiff's *pro se* status and his prior factual allegations concerning Officer Riordan, the Court does not dismiss the claims against Officer Riordan on personal-involvement grounds alone. Plaintiff is cautioned, however, that any future amended complaint must contain all factual allegations supporting his claims against each Defendant.

any rights. A plaintiff must ground that claim in a right conferred by the Constitution or the laws of the United States. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

**1. Unreasonable Search and Seizure**

Plaintiff claims that Defendants "unlawfully detained and searched Plaintiff and his vehicle in the absence of a warrant, probable cause, or exigent circumstances[.]" [Am. Compl. at 5.] The Fourth Amendment prohibits unreasonable searches. U.S. Const. amend. IV. Warrantless searches are generally *per se* unreasonable, subject to a few well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception to the warrant requirement is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). As succinctly articulated in *Gant*, police officers "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

The Court previously dismissed this claim without prejudice because the allegations concerning the vehicle search were "impermissibly vague[.]" [Docket No. 3 at 10.] Specifically, Plaintiff's Complaint did "not allege where he was during the search, who searched the vehicle or why it was searched, or what parts of the vehicle were searched." [*Id.*] Plaintiff's Amended Complaint cures only one of these deficiencies. Plaintiff now alleges that he was restrained in the police vehicle at the time of the search. [Am. Compl. at 4.] Although this allegation indicates Plaintiff was not within reaching distance of the passenger compartment, *see Gant*, 556 U.S. at 351,

Plaintiff still does not identify who searched the vehicle, what portions of the vehicle were searched, or the circumstances that prompted the search. Instead, he relies on conclusory assertions that the search occurred without a warrant, consent, probable cause, or exigent circumstances. [Am. Compl. at 5.] Such allegations do not provide sufficient factual matter from which the Court can plausibly infer that the search was unreasonable. *See Slaughter v. Galloway Twp.*, 2021 WL 4059834, at *2 (D.N.J. Sept. 7, 2021) (allegation that police searched vehicle without consent that "does not specify what the officers stated or whether the officers had any reason to" do so is insufficient to survive screening).

To the extent Plaintiff separately challenges a search of his person, Plaintiff fails to allege who searched him, when the search occurred, what the search entailed, or any circumstances surrounding it. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible") (citations omitted).

Plaintiff alleges he was stopped at an "inspection sticker checkpoint or roadblock[,]" and "[t]he inspection sticker checkpoint or roadblock was unconstitutional[.]" [Am. Compl. at 2; Pl.'s Aff. at 1.] Although a roadblock constitutes a seizure, roadblocks are not *per se* unconstitutional. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 39–40 (2000); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Indeed, the Supreme Court has recognized that checkpoints serving certain roadway-safety purposes may be constitutionally permissible. *See Edmond,* 531 U.S. at 39–41. The Amended Complaint provides no factual allegations concerning the roadblock's

purpose or operation sufficient for the Court to evaluate its constitutionality. *See Edmond*, 531 U.S. at 41–44 (distinguishing permissible checkpoints serving roadway-safety purposes from impermissible checkpoints whose primary purpose is ordinary crime control). Thus, Plaintiff's conclusory allegation that the inspection-sticker checkpoint was unconstitutional, without factual allegations explaining why, is insufficient to state a claim of unreasonable seizure under the Fourth Amendment.

**2. Excessive Force**

Plaintiff claims "Defendants used unreasonable and excessive force during Plaintiff's arrest, without resistance or threat, causing injury and trauma." [Am. Compl. at 5.] "An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Graham,* 490 U.S. at 394–95). The claim arises when "a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." *Id.* at 634 (citing *Brown v. Borough of Chambersburg,* 903 F.2d 274, 277 (3d Cir. 1990)). Courts analyze allegations of injuries caused by police officers under the Fourth Amendment's "'reasonableness' standard." *Graham*, 490 U.S. at 395.

The Court previously dismissed Plaintiff's excessive force claim because he failed to provide sufficient factual details concerning the alleged use of force. [Docket No. 3 at 11–13.] Although Plaintiff alleged that he was "attacked by three armed

officers," the Complaint did not describe the nature of that attack or otherwise provide sufficient facts to support a finding of unreasonable use of force. [*Id.*] [6]

The Amended Complaint does not cure that deficiency. Plaintiff now alleges that video footage demonstrates that officers used excessive force "despite no threat or resistance" and that he suffered "bruising, humiliation, and psychological trauma." [Am. Compl. at 4.] Plaintiff fails to describe what force, if any, Defendants actually used against him or which Defendants used the alleged force. *See Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011) ("While detailed factual allegations are not required, the pleading must include more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation[.]'"); *Evancho*, 423 F.3d at 353. Given the lack of factual details provided by Plaintiff, Plaintiff has not alleged that the force was unreasonable.

Accordingly, Plaintiff's unreasonable search and seizure and excessive force claims will be dismissed without prejudice.

[6] Plaintiff's original Complaint contained additional allegations concerning the alleged use of force that are not repeated in the Amended Complaint. Because the Amended Complaint supersedes the original Complaint, the Court does not aggregate the allegations of the two pleadings. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Even if the Court considered those prior allegations, however, the result would be the same. Although the original Complaint alleged that the arresting officers "cuffed [him] to a bench" and Officer Kostue, Lange, and Corporal Denning "attacked" Plaintiff while he was in a holding cell, causing cuts to his shins, it likewise failed to describe the nature of the force used. [Docket No. 3 at 11–13.] This deficiency was identified in the Court's prior Opinion. [*Id.*]

### 3. Supervisory Liability

Plaintiff also names Chief Arthur Waterman and Captain William Dunleavy as Defendants. [Am. Compl. at 2.] Plaintiff claims the two "are responsible for the oversight, training and policy implementation of the Medford Police Department." [*Id.*]

Under § 1983, supervisors "are liable only for their own unconstitutional actions." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes*, 766 F.3d at 319. Supervisors may be liable if, with the requisite level of intent for the constitutional violation alleged, they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Supervisors may also be liable "'if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.* (citations omitted).

As an initial matter, Plaintiff has failed to plausibly allege an underlying constitutional violation for the reasons discussed above. His supervisory-liability claims against Waterman and Dunleavy therefore necessarily fail. Even assuming Plaintiff had adequately alleged an underlying constitutional violation, however, he has not pleaded sufficient facts to impose liability on either Defendant.

Plaintiff does not identify any policy or practice that either Defendant personally established or maintained and that directly caused the alleged constitutional violations. Nor does Plaintiff allege that either Defendant participated in, directed, or had knowledge of and acquiesced in the alleged violations. Although Dunleavy signed the Internal Affairs correspondence following the investigations, that post-incident involvement does not establish his participation in or contemporaneous knowledge of the underlying conduct. Plaintiff alleges no comparable personal involvement by Waterman. Accordingly, to the extent Plaintiff asserts § 1983 claims against Waterman and Dunleavy based on their supervisory roles, those claims will be dismissed without prejudice.

**4. Municipal Liability**

Plaintiff also claims "Defendant Township of Medford, through its policies, training, and ratification, caused the constitutional violations against Plaintiff."[7] [Am. Compl. at 5.] "A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

---

[7] Although Plaintiff does not assert a separate cause of action for violation of his Sixth Amendment right to a speedy trial, Plaintiff does allege that his "right to a speedy trial under the Sixth Amendment has been violated by the Township of Medford." [Am. Compl. at 5.] Even liberally construing this allegation as asserting a claim under Section 1983, Plaintiff does not allege that the purported delay resulted from a municipal policy or custom sufficient to impose liability upon the Township under Monell. Accordingly, to the extent that the Amended Complaint may be construed to assert a Section 1983 claim based on the alleged violation of Plaintiff's Sixth Amendment right to a speedy trial, that claim is dismissed.

Rather, to establish municipal liability under Section 1983, a plaintiff generally must demonstrate that a municipal policy or custom was the "moving force" behind the constitutional tort of one of its employees. *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). Alternatively, "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

As an initial matter, because Plaintiff has failed to plausibly allege an underlying constitutional violation, his claim for municipal liability fails. Even assuming an underlying constitutional violation, Plaintiff has not sufficiently alleged municipal liability. Plaintiff appears to rely principally on the Internal Affairs determinations that the officers "followed the appropriate department policies and procedures" to establish that the alleged misconduct was authorized by municipal policy. [Docket No. 5-2 at 1–5.] But those letters do not identify the policies at issue, describe what those policies required, or indicate that any policy authorized unconstitutional conduct. Thus, they do not plausibly establish that a municipal policy was the moving force behind the alleged violations. Plaintiff likewise alleges no widespread practice sufficient to constitute a municipal custom.

Plaintiff's references to "training" and "ratification" are similarly conclusory. He identifies no deficiency in the Township's training or facts demonstrating deliberate indifference to a known need for additional training. Nor does he allege facts showing

that an official possessing final policymaking authority adopted or ratified the allegedly unconstitutional conduct.

Accordingly, to the extent Plaintiff asserts Section 1983 claims against the Township of Medford based on municipal liability, those claims will be dismissed without prejudice.

**B. <u>Section 1985 Conspiracy</u>**

Plaintiff claims "Defendants conspired to violate Plaintiff's rights through coordination, mutual protection, falsified reports, and silence regarding unlawful conduct." [Am. Compl. at 5.] Section 1985 of the Civil Rights Act is a conspiracy statute. 42 U.S.C. § 1985(3). Like Section 1983, Section 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). To state a claim of conspiracy in violation of Section 1985, Plaintiff must allege (1) a conspiracy involving two or more persons; (2) that one or more of the conspirators performed or caused to be performed an overt act in furtherance of the conspiracy; and (3) that the overt act injured plaintiff in his person or property, or deprived plaintiff of any right or privilege of a citizen of the United States. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Plaintiff must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]" *Griffin*, 403 U.S. at 102. Section 1985(3) provides for causes of action against both state and private actors. *Novotny*, 442 U.S. at 371–72; *Barnes*, 242 F.3d at 162.

Plaintiff, however, provides no more than conclusory allegations as to the formation of the purported conspiracy between the Defendants. Plaintiff states that "[b]ody camera footage proves conspiracy… as officers knew there was no crime to charge Plaintiff with until Denning and Lange decided on [o]bstruction." [Am. Compl. at 4.] But Plaintiff's characterization of the body-camera footage as "prov[ing] conspiracy" is a legal conclusion. And the allegation that Denning and Lange "decided on" an obstruction charge, without more, does not plausibly allege that they reached an agreement to deprive Plaintiff of a federally protected right. Likewise, Plaintiff's generalized assertions of "coordination, mutual protection, falsified reports, and silence regarding unlawful conduct," [*id.* at 5] do not identify facts concerning the formation, object, or participants of any purported agreement. Such conclusory and formulaic allegations are insufficient to state a Section 1985 claim. *Twombly*, 550 U.S. at 555; *see also Alford v. Plumeri*, 2024 WL 2933194, at *8 (D.N.J. June 11, 2024) (dismissing Section 1985 claim where plaintiff "has not alleged the elements of such a claim in a non-conclusory manner"); *Baldwin v. Brown*, 2019 WL 1589968, at *11 (D.N.J. Apr. 12, 2019) (dismissing Section 1985 claims as conclusory where complaint failed to adequately allege agreement by defendants to violate plaintiff's rights or facts suggesting discriminatory motive).

Additionally, the Amended Complaint does not identify any protected class to which Plaintiff belongs or allege that any purported conspiracy was motivated by any type of invidious discriminatory animus. These omissions independently defeat Plaintiff's Section 1985 claim.

The Court identified these same deficiencies in dismissing Plaintiff's Section 1985 claim without prejudice in its prior Opinion. [Docket No. 3 at 13–14.] Accordingly, Plaintiff's Section 1985 claim will be dismissed without prejudice.

**C. <u>RICO</u>**

Plaintiff claims "Defendants engaged in an enterprise whose goal was to extract revenue and silence dissent, operating a de facto racketeering scheme[.]" [Am. Compl. at 5.] "Under the RICO, a person who is injured by reason of a criminal RICO violation may bring a civil action against the RICO violator." *Smith v. Hildebrand*, 244 F. App'x 288, 290 (11th Cir. 2007) (citing 18 U.S.C. § 1964). "It is well-settled that the alleged injury must arise from an unlawful act specified in 18 U.S.C. § 1961(1)." *Id.* (citing *Beck v. Prupis*, 529 U.S. 494, 504–06 (2000) ("we conclude that an injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO, ... is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)"); *but see Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001) ("a plaintiff could, through a § 1964(c) suit for violation of 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962" (quoting *Beck*, 529 U.S. at 506–07)).

The racketeering activity alleged by Plaintiff is false arrest, excessive force, unlawful search and seizure, retaliation against constitutional exercise, concealment of misconduct, misuse of authority, and abuse of court processes. [Am. Compl. at 5.] These are not unlawful acts specified as racketeering activity under 18 U.S.C. § 1961(1). Although Plaintiff also refers generally to "fraudulent filings," he does not

identify any statutory predicate offense arising from those filings or plead facts establishing mail fraud, wire fraud, or any other fraud offense enumerated in § 1961(1). Having failed to allege any racketeering activity, the civil RICO claim is dismissed without prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). *See Gaskins v. Santorum*, 324 F. App'x 147, 149 (3d Cir. 2009) (affirming dismissal of Civil RICO claim pursuant to § 1915(e)(2)(B) where claim did not contain "elements of a cause of action nor facts that identify proscribed conduct.")

**D. <u>18 U.S.C. § 242</u>**

Plaintiff's reference to a federal criminal statute, 18 U.S.C. § 242, is futile since this federal criminal statute does not provide private causes of action. *See Smalls v. Riviera Towers Corp.*, 2017 WL 4180115, at *3 (D.N.J. Sept. 21, 2017), *aff'd*, 782 F. App'x 201 (3d Cir. 2019); *Hoegemann v. Palma*, 2017 WL 455930, at *6 (D. Conn. Feb. 2, 2017). Indeed, the Court previously dismissed Plaintiff's § 242 claim with prejudice on this very ground. [Docket No. 3 at 5–6.] Accordingly, Plaintiff's § 242 claim is dismissed with prejudice.

## IV. CONCLUSION

Upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's Amended Complaint will be **DISMISSED**. Plaintiff's 18 U.S.C. § 242 claim will be **DISMISSED WITH PREJUDICE**. All other claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff may amend his pleadings to remedy the deficiencies identified herein within thirty (30) days. If Plaintiff does not timely file an amended complaint,

this matter will be dismissed with prejudice. An appropriate Order shall issue on this date.

Dated: August 27, 2026

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge